**ALLEGHENY COUNTY HOUSING AUTHORITY, Appellant**

v.

**Lancing JOHNSON, Appellee.**

Superior Court of Pennsylvania.

Argued June 20, 2006.

Filed Sept. 14, 2006.

Katherine M. Doherty, Pittsburgh, for appellant.

Karen I. Marryshow, Pittsburgh, for appellee.

BEFORE: BOWES, PANELLA and POPOVICH, JJ.

OPINION BY BOWES, J.:

¶ 1 Appellant Allegheny County Housing Authority ("ACHA") appeals from the order of the Allegheny Court of Common Pleas denying its post-trial motions. ACHA argues that the trial court abused its discretion and erred as a matter of law in failing to evict Appellee Lancing Johnson from a public housing unit owned by ACHA. For the reasons that follow, we agree and vacate the order of the trial court.

¶ 2 The relevant facts and procedural posture of this case are as follows. ACHA owns the Wilmerding Apartments, which provides low-income public housing primarily for elderly tenants located in Wilmerding, Pennsylvania. Appellee entered into a lease with ACHA for a unit in the Wilmerding Apartments on December 3, 2002. On December 4, 2003, ACHA's property manager, Marian Watkins, sent Appellee a letter warning him that she had received complaints that he banged on the door of another resident's apartment in the middle of the night on two separate occasions. One of those times, he used a baseball bat and caused damage to the door. *See* ACHA Letter, 12/3/03, at 1. Ms. Watkins informed Appellee that she would "begin eviction proceedings" if his disturbing behavior continued. *Id.* On March 16, 2004, Ms. Watkins again wrote to Appellee; this time, she advised him that he had violated his lease by allowing his nephew to reside with him longer than fourteen days. The letter also stated that several residents "complained about the fighting, arguing and loud noise" coming from Appellee's apartment. ACHA Letter, 3/16/04, at 1. Once again, Ms. Watkins told Appellee that he would be evicted if the disturbances continued.

¶ 3 A few weeks later, in the early morning hours of April 7, 2004, the police department received a complaint from Wilmerding Apartments regarding loud music and a report of an intoxicated man on the premises. Upon arriving, the officers heard loud music originating from Appellee's unit and found Appellee slouched over the stairs. As a result, on April 15, 2004, Ms. Watkins provided Appellee with a Notice of Lease Termination, which stated that his lease was terminated for failing to comply with its terms and conditions. ACHA specifically averred that Appellee allowed guests to stay longer than fourteen days without written consent of the landlord and acted in an unreasonable manner and disturbed other residents' peaceful use of their accommodations. ACHA also asserted that Appellee failed to

pay rent. The sections of the lease that Appellee purportedly violated, Section 11.A, 11.B, and 11.I, read:

**11. TENANT OBLIGATIONS**

Tenant shall have the following obligations:

A. **No Assignment or Sublease.** Tenant may not assign this Lease, nor sublet or transfer possession of the premises.

B. **No Long–Term Guests (without permission); No Boarders or Lodgers.**

    1.) Tenant may not give accommodation to boarders or lodgers;

    2.) Tenant may not allow guests to stay for more than a total of fourteen (14) days each year without the written consent of the Landlord.

. . . .

I. **Right to Peaceful Enjoyment of Premises.** Tenant will act, and cause household members and guests to act, in a manner which will not unreasonably disturb other residents' peaceful enjoyment of their accommodations and will be conducive to maintaining the project in a decent, safe and sanitary condition.

ACHA Lease, at 8–9. ACHA instructed Appellee to vacate the unit by May 15, 2004.

¶ 4 After Appellee failed to vacate the premises, ACHA initiated this eviction action on July 20, 2004. On October 28, 2004, an arbitration panel decided in favor of ACHA; however, Appellee appealed the decision to the Allegheny County Court of Common Pleas.

¶ 5 At a nonjury trial on January 28, 2005, ACHA presented the testimony of numerous residents who attested that Appellee had disturbed their enjoyment of their residences in various ways. One res-ident, Susan Davis, testified that she had not been able to sleep as a result of Appellee's late night partying and playing of loud music. Mary Shuster complained that noise and fighting originating from Appellee's unit made her afraid to ride the elevators or leave her apartment in the evening. ACHA also presented evidence that Appellee had left the jets to his stove running, causing the fire department to evacuate the residents of Appellee's floor. Following the receipt of evidence, the trial court concluded that Appellee did engage in behavior that violated the terms of the lease; however, the trial court did not enter a verdict. Rather, it retained jurisdiction over the matter to give Appellee an opportunity to modify his conduct and stated that it would grant ACHA possession in the event Appellee committed another violation of the lease. See N.T. Trial, 1/28/05, at 164–165.

¶ 6 Less than one month later, on February 18, 2005, Appellee's unit caught fire and was destroyed. Additionally, the apartment building suffered approximately $50,000 in damage. As a result, ACHA filed a petition for emergency relief seeking to evict Appellee on the basis that he started the fire. A hearing on ACHA's petition was held on March 15, 2005, wherein ACHA presented evidence that the fire was caused by a lit cigarette lying on the couch in Appellee's apartment. Thomas Moore, a detective assigned to the Allegheny County Fire Marshal's Office, testified that during a telephone conversation, Appellee stated that he "had been smoking and set the cigarette down on an end table next to the sofa[.]" N.T. Hearing, 3/15/05, at 69. Based upon the evidence from the scene and the ensuing investigation, Deputy Fire Marshal Michael Shawley opined that the cause of the fire was accidental and was a "smoking-related fire." Id. at 60. At the hearing, Appellee

actually admitted that he "may have left the cigarette on the table." *Id.* at 140.

¶ 7 At the close of the hearing, the trial court instructed counsel for both parties to submit proposed findings of fact and conclusions of law on May 6, 2005. Counsel complied, and based on their respective submissions, the court adopted the following conclusions submitted by ACHA:

1. The lease between the ACHA and [Appellee] is a valid contract between the parties.

2. [Appellee] breached the lease when he violated Sections 11.A, 11.B, 11.I, 11.P, 16.C(a) and 16.C(k) of the lease and Sections A.3 and A.5 Rules and Regulations of Tenancy. Specifically, the following violations constitute serious or repeated violations of the material terms of the lease which is cause for termination by the ACHA:

. . . .

C. When [Appellee] was observed partying with loud music playing at all hours of the night by Susan Davis, he violated Section 11.I of the lease by disturbing her peaceful enjoyment of her accommodation and inhibiting her ability to sleep. This violation constitutes a serious and repeated violation of the material term of the lease which is cause for termination by the ACHA.

D. When [Appellee] pounded on the door of Mary Shuster and asked her to "come out of her apartment so that he could see her," he violated Section 11.I of the Tenant Obligations of the lease by disturbing her peaceful enjoyment of her accommodation in that Shuster was afraid to leave her apartment in the evening and afraid to ride the elevators. This violation constitutes a serious and repeated violation of the material term of the lease which is cause for termination by the ACHA.

E. When [Appellee] banged on the door of his neighbor, Murray Watts, and actually dented the door on December 3, 2003 at 3:00 a.m., he violated Section 11.I of the lease by disturbing the peaceful enjoyment of other residents [sic] accommodations. Further, he caused damage to the door. This violation constitutes a serious and repeated violation of the material term of the lease which is cause for termination by the ACHA.

F. When [Appellee] allowed his nephew, Nathaniel Bunn, to reside with him for a period that exceeded 14 days, [Appellee] therefore violated Section 11(A)(B)1.2. [sic] by allowing a guest to stay for more than a total of 14 days with the written consent of the landlord. This violation constitutes a serious and repeated violation of the material term of the lease which is cause for termination by the ACHA.

. . . .

H. When [Appellee] left the stove jets and the pilots on to the oven, July 10, 2004, he endangered the safety of other residents and therefore violated Section 11 of the Tenant Obligations, Part (I) of the lease. This violation constitutes a serious and repeated violation of the material term of the lease which is cause for termination by the ACHA.

ACHA's Conclusions of Law Granted by the Trial Court, issued May 19, 2005, at 3–5 (internal citations omitted).[1] Despite Appellee's admission, the trial court determined that he was not at fault in the fire episode but instead found that causation of

---

1. For purposes of clarity, we have renumbered the trial court's findings.

the fire remained in question. *See* Appellee's Proposed Conclusion of Law Granted by the Trial Court, issued May 19, 2005, at 4.

¶ 8 Then, although the trial court determined that ACHA had established that Appellee violated terms of the lease, it entered the following verdict, which reads in pertinent part:

> Possession is granted to [ACHA] but that [ACHA] shall refrain from executing on its possession [as] long as [Appellee] submits weekly verification to his manager that he is attending the Turtle Creek MH/MR program in which he is currently enrolled and that he has attended at least three Alcoholics Anonymous Meetings per week.
>
> At the end of one year from the date of this Order, the Order will terminate and [Appellee's] tenancy shall be governed by the terms of his then current lease. [ACHA] shall transfer [Appellee] to another housing community within one month of this Order.
>
> If [Appellee] is involved in any further alcohol related behavior which causes a disturbance on Housing Authority property within the term of this Order, [ACHA] may evict without need for further legal action.
>
> . . . .
>
> Sheriff's office shall recognize this verdict as a valid writ of possession.

Nonjury verdict, 5/19/05, at 1. ACHA filed timely post-trial motions challenging the trial court's ruling; however, the trial court denied relief on September 8, 2005. This timely appeal followed.

¶ 9 Our standard of review of a nonjury verdict is well-settled:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue ... concerns a question of law, our scope of review is plenary. The trial court's conclusions of law on appeal originating from a nonjury trial "are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts" of the case.

*Wilson v. Transport Ins. Co.*, 889 A.2d 563, 568 (Pa.Super.2005) (quoting *Amerikohl Mining Co., Inc. v. Peoples Natural Gas Co.*, 860 A.2d 547, 549–550 (Pa.Super.2004) (internal citations omitted)).

¶ 10 Essentially, ACHA argues that once the trial court determined that Appellee engaged in serious and repeated violations of material terms of the lease, ACHA was entitled to evict Appellee and gain possession. Therefore, ACHA continues that the trial court erred by not immediately granting it possession. We agree and find that the trial court misapplied the law to the facts of the case.

¶ 11 We begin our analysis by noting that Appellee is the resident of subsidized housing owned by a public housing authority, and therefore the United States Housing Act of 1937, 42 U.S.C. § 1437 *et seq.*, governs. Congress, by enacting the Housing Act, has advanced the policy of aiding states in remedying "the unsafe housing conditions and the acute shortage of decent and safe dwellings for low-income

families[.]" 42 U.S.C. § 1437(a).[2] To that end, and significant to the instant matter, ACHA is required to "utilize leases which ... require that the public housing agency may not terminate the tenancy except for serious or repeated violation of the terms or conditions of the lease or for other good cause[.]" 42 U.S.C. § 1437d(*l*)(5). Additionally, the Department of Housing and Urban Development ("HUD") has ratified regulations that prescribe provisions that must be incorporated into lease agreements for public housing dwelling units. *See* 24 C.F.R. § 966.1 *et seq.* Included in those provisions are tenant obligations requiring the tenant to act and to cause guests to act "in a manner which will not disturb other residents' peaceful enjoyment of their accommodations and will be conducive to maintaining the project in a decent, safe and sanitary condition[.]" 24 C.F.R. § 966.4(f)(11). The regulations also state that serious or repeated violations of material terms of the lease, such as failing to fulfill tenant obligations, are grounds for termination of the tenancy. *Id.* at § 966.4(*l*)(2)(i).

¶ 12 In addition to the statutes and regulations governing this type of lease, we are aware that cases such as this warrant special consideration due to the nature of a tenant's financial status. Specifically in the instant matter, we are cognizant of the facts that Appellee has a severe drinking problem and qualifies for public housing. He may not have the means to find alternate housing if evicted. In fact, the trial

court indicated the same at trial by noting that despite what the evidence established, it would not be "throwing anybody out on the street" in inclement weather.[3] However, we find that this concern cannot override established principles of law and other residents' rights. To illustrate this point, we find *Department of Housing and Urban Development v. Rucker*, 535 U.S. 125, 122 S.Ct. 1230, 152 L.Ed.2d 258 (2002), instructive.

¶ 13 In *Rucker*, the Oakland Housing Authority "(OHA)" instituted eviction proceedings against public housing tenants alleging violations of the provisions in their leases. OHA averred that two defendants' respective grandsons were caught smoking marijuana in the apartment complex, the daughter of another defendant was found with cocaine and a crack cocaine pipe three blocks from the residence, and another defendant's caregiver was caught on three separate occasions with cocaine in his apartment. The evictions were predicated on 42 U.S.C. § 1437d(*l*)(6), which requires that public housing agencies "utilize leases which ... provide that any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or off such premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy." The tenants' leases, tracking

---

2. Congress has vested the responsibility, flexibility, and accountability in the public housing authorities like ACHA, which administer the programs providing federal housing assistance. 42 U.S.C. § 1437(a)(1)(C). A public housing authority may offer several forms of assistance. Herein, ACHA has provided public housing assistance to those individuals, such as Appellee, who lease a unit in a dwelling owned and operated by ACHA. *See* 42 U.S.C. § 1437d(*l*).

3. Indeed, the trial court's motivation to retain jurisdiction over the matter stemmed from its concern for Appellee's well-being if evicted. On the day of the hearing, January 28, 2005, the trial court noted that the outside temperature was negative three degrees and that evicting Appellee would only "increase the problems for the police and everybody else." N.T. Trial, 1/28/05, at 11.

the language of section 1437d(*l*)(6), obligated the tenants to "assure that the tenant, any members of the household, a guest, or another person under the tenant's control, shall not engage in ... any drug-related criminal activity on or near the premise[s]." *Id.* at 128, 122 S.Ct. 1230. The tenants' leases also stated that the tenant "understand[s] that if I or any member of my household or guests should violate this lease provision, my tenancy may be terminated and I may be evicted." *Id.*

¶ 14 The tenants argued that the statute does not require lease terms authorizing the eviction of innocent tenants who lack knowledge of drug-related criminal activities. The Supreme Court rejected this argument, finding that section 1437d "unambiguously requires lease terms that vest local public housing authorities with the discretion to evict tenants for the drug-related activity of household members and guests whether or not the tenant knew, or should have known, about the activity." *Id.* at 130, 122 S.Ct. 1230. In reaching this conclusion, the Court posited:

> Regardless of knowledge, a tenant who 'cannot control drug crime, or other criminal activities by a household member which threaten [the] health or safety of other residents, is a threat to other residents and the project.' With drugs leading to 'murders, muggings, and other forms of violence against tenants,' and to the 'deterioration of the physical environment that requires substantial government expenditures,' it was reasonable for Congress to permit no-fault evictions in order to 'provide public and other federally assisted low-income housing that is decent, safe, and free from illegal drugs[.]'

*Id.* at 134, 122 S.Ct. 1230 (internal citations omitted); [4] *see also Powell v. Housing Au-*

*thority of the City of Pittsburgh,* 571 Pa. 552, 812 A.2d 1201 (2002) (holding that a public housing authority may terminate benefits conferred by section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f, for the violent criminal activity of a family member without having to prove that the violent criminal activity threatens the health, safety, or right to peaceful enjoyment of the premises by other residents).

¶ 15 Congress, in enacting section 1437d, made clear that public housing agencies may evict tenants who engaged in serious or repeated violations of the terms of the lease. ACHA's lease complies with and tracks the language of the federal regulations. For example, Section 11.I of the ACHA lease mirrors the language of section 966.4(f)(11). Additionally, the lease includes grounds for termination specifically contemplated by Congress and the HUD regulations, as evidenced by the inclusion of the clause that ACHA may terminate the tenancy "only for **serious or repeated violation of the material terms of the lease,** such as failure to make payments due under the lease or to fulfill tenant obligations as described herein[.]" ACHA Lease, Section 16.C, at 12 (emphasis in original).

¶ 16 Therefore, we will now examine the facts of this case to determine if ACHA had the right to evict Appellee for repeatedly violating the terms of the lease. As Appellee engaged in a pattern of behavior that disrupted other residents' peaceful enjoyment of their accommodations, we find that ACHA was entitled to evict Appellee.

¶ 17 The evidence from the trial held on January 28, 2005, established that Appellee: 1) repeatedly played loud music at all

---

**4.** Contrary to Appellee's assertion, *Rucker* does not stand for the proposition that a pub-

lic housing authority may terminate a tenancy only for drug-related or criminal activity.

hours of the night; 2) banged on the doors of other residents; 3) caused damage to another resident's door; 4) permitted his nephew to reside with him in excess of fourteen days without written consent from ACHA; 5) allowed his nephew to engage in fighting, arguing, and creating loud noise during his stay; 6) engaged in disruptions requiring police intervention on April 7, 2004; and 7) left the stove jets and oven pilot running, thereby causing the evacuation of his floor.[5] Regarding his nephew, Ms. Watkins observed that he would arrive at all hours of the day and night and prop the door open to avoid the security system, and she stated that he wrote an obscenity on the door of one of Appellee's neighbors. N.T. Trial, 1/28/05, at 87–88; ACHA's Proposed Findings of Fact Granted by Trial Court, issued May 19, 2005, at 6. Appellee received two written notices that warned him of his disruptive behavior and instructed him to modify it immediately.

¶ 18 Moreover, we disagree with the trial court's finding that the fire in Appellee's unit could not be considered a violation of the terms of the lease. The trial court's finding was simply not supported by competent evidence. The evidence presented at the March 15, 2005 hearing established that Appellee, albeit not intentionally, started the fire which subsequently caused severe damage to the Wilmerding Apartments. The Allegheny County Fire Marshal determined that the fire was accidental and was smoking-related. Appellee admitted responsibility for starting the fire when he told Mr. Moore that he "had been smoking and set the cigarette down on an end table next to the sofa[.]" N.T. Hearing, 3/15/05, at 69. As such, Appellee's negligence should not be discounted simply because the fire was labeled "accidental." His behavior directly jeopardized the safety and well-being of all residents, particularly those elderly residents who may have difficulty evacuating the building quickly in the event of an emergency.

¶ 19 Viewing the entire record, Appellee's behavior in the apartments is certainly the type Congress sought to remedy in public housing when it enacted section 1437d. The record clearly shows that Appellee repeatedly disrupted other residents' quiet enjoyment of their accommodations. In addition to numerous instances of disruptive conduct, he **twice** endangered the lives of other residents by creating fire hazards. Furthermore, Appellee threatened the safety of all tenants by allowing his nephew to bypass the building's security measures, thereby permitting access to the apartment complex by strangers. We find his conduct to be as damaging to the Wilmerding Apartments as the defendants' actions in *Rucker*. Therefore, Appellee's behavior unequivocally amounted to "serious or repeated violation[s] of the material terms of the lease."

---

**5.** Another resident, Lolita Thompkins, testified that Appellee, in Thompkins's presence, told a friend that "this was the bitch that have [sic] me evicted from this building." N.T. Trial, 1/28/05, at 47. She also stated that Appellee threatened her with a knife. Despite her testimony, though, the trial court did not find it constituted a material breach of the lease because Ms. Thompkins openly referred to Appellee as a "faggot," and the trial court felt that she had a strong bias towards Appellee. *Id.* at 158–159. The trial court also discounted the effect of the knife incident, stating, "[T]he testimony that I've received with regard to the brandishing of a knife, ... I don't give any weight to in the decision that I make for the reason that the only purported victim is the very person who felt, for whatever reason, inclined to withdraw the charges." *Id.* at 151–152. As these factual findings are supported by competent evidence, we must give deference to them despite ACHA's assertions to the contrary.

¶ 20 Finally, we are sympathetic to the hardship that Appellee may face in light of his eviction. We also understand that the right of a person in Appellee's shoes to continue to live in subsidized housing is an important right. However, contrary to his assertions, his right to occupancy is not absolute; Congress and the Supreme Court have made this point clear. *See Rucker, supra.* Having found that Appellee engaged in "serious or repeated violations" of the lease, the trial court erred by not immediately granting ACHA possession of his unit.

¶ 21 Order vacated. Case remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.