J-A10021-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ZACHARY JEFFERSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MICHAEL CAROSELLA, MARIO | : | No. 1527 EDA 2020 |
| CAROSELLA, 755-767 CHADWICK | : | |
| STREET PROPERTIES, GP, LLC., | : | |
| 755-767 CHADWICK STREET | : | |
| PROPERTIES, L.P., JOHN DOES 1-10, | : | |
| AND JOHN DOE CORP. 1-10 | : | |

Appeal from the Judgment Entered June 25, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 170702774

| | | |
|---|---|---|
| ZACHARY JEFFERSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MICHAEL CAROSELLA, MARIO | : | |
| CAROSELLA, 755-767 CHADWICK | : | |
| STREET PROPERTIES, GP, LLC., | : | No. 1528 EDA 2020 |
| 755-767 CHADWICK STREET | : | |
| PROPERTIES, L.P., MIK MAR | : | |
| ASSOCIATES, INC., JOHN DOES | : | |
| 1-10, AND JOHN DOE CORP. 1-10 | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: MICHAEL CAROSELLA | : | |
| AND MIK MAR ASSOCIATES, INC. | | |

Appeal from the Judgment Entered June 25, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 170702774

J-A10021-21

BEFORE: PANELLA, P.J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:                    Filed: October 13, 2021

In this cross-appeal, Zachary Jefferson ("Jefferson") and Michael Carosella and Mik Mar Associates, Inc. (collectively "Carosella")[1] appeal different aspects of the June 25, 2020 judgment entered upon a jury verdict in favor of Jefferson in the amount of $289,532.50 and upon a non-jury verdict denying Jefferson's claim for violation of the Unfair Trade Practices and

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] A jury found Michael Carosella liable for 30% of the damages on Jefferson's claim for negligence and Mik Mar Associates, Inc. liable for 70% of Jefferson's damages. **See** Jury Verdict Slip, 2/10/20. No other defendants were found liable for Jefferson's losses. As such, only Michael Carosella and Mik Mar Associates, Inc. appealed the judgment entered in favor of Jefferson. For ease of disposition, Michael Carosella and Mik Mar Associates, Inc., when collectively referred to as "Carosella", will be referred to using the gender-specific personal pronoun in the third-person singular – "he".

- 2 -

Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1 to 201-10. [2, 3] On appeal, Jefferson challenges that aspect of the judgment encompassing the non-jury verdict rejecting his UTPCPL claim. On cross-appeal, Carosella challenges the jury verdict in favor of Jefferson. We affirm.

The trial court summarized the factual history as follows:

[Jefferson's] underlying claims [for, *inter alia*, a violation of the UTPCPL and negligence] were premised on the defective construction of his [house] which led to water infiltration through the building's exterior stucco. [Jefferson] is the second owner of the property. Following its construction in 2011, [Carosella], the builder, sold the completed property to [] the original buyer. In 2015, [Jefferson] agreed to purchase the [property] from [the original buyer] conditioned on a $5,000[.00] credit for cracking stucco and the completion of other inspections. [The original buyer] rejected [] this offer and made a $1,500[.00] counteroffer to [Jefferson]. This led to further investigation, including multiple inspectors going to the property to examine the [house's]

---

[2] A review of Jefferson's notice of appeal demonstrates that he appealed the June 25, 2020 order denying his post-trial motion to reconsider the denial of his claim under the UTPCPL. A review of Carosella's notice of appeal reflects an appeal from a separate June 25, 2020 order denying his post-trial motion requesting judgment *non obstante veredicto*. In both June 25, 2020 orders, the trial court directed that judgment be entered in favor of Jefferson in the amount of $289,532.50. "[A]n appeal to this Court can only lie from judgments entered subsequent to the trial court's disposition of any post-verdict motions, not from the order denying post-trial motions." **Johnston the Florist, Inc. v. TEDCO Constr. Corp.**, 657 A.2d 511, 514 (Pa. Super. 1995) (citation omitted). Here, the judgment in favor of Jefferson and against Carosella was entered June 25, 2020. Therefore, both notices of appeal shall be treated as appeals **from the entry of judgment** and not from the order denying the respective post-trial motions. The captions have been corrected accordingly.

[3] "[T]here is no right to a jury trial for private causes of action under the UTPCPL." **Fazio v. Guardian Life Ins. Co. of Am.**, 62 A.3d 396, 411 (Pa. Super. 2012), *appeal denied*, 72 A.3d 604 (Pa. 2013).

condition. There was also an [] inquiry [*via* electronic mail directed to] Carosella from [the original buyer's] real estate agent[.] It is the response of [Carosella] to the real estate agent's inquiry that is the issue in [Jefferson's] appeal, which [Jefferson avers] gives rise to the UTPCPL claims and his entitlement to damages available under that statute.

Trial Court Opinion, 10/27/20, at 3 (footnote omitted). "[In April 2015, Jefferson] purchased the [house] knowing of the stucco issues. He ultimately paid $234,508.00 for the necessary repairs attributed to the water infiltration caused by defective construction of the stucco." Trial Court Opinion, 11/17/20, at 4 (footnote omitted).

On February 7, 2020, a jury found Carosella negligent in the construction of the house and awarded Jefferson $289,532.50 in damages. That same day, the trial court, in a non-jury verdict, denied Jefferson's claim alleging a violation of the UTPCPL. N.T., 2/7/20, at 94-95. On February 27, 2020, Jefferson and Carosella filed their respective post-trial motions. On June 25, 2020, the trial court, in separate orders, denied both parties' post-trial motions and entered judgment in favor of Jefferson in the amount of $289,532.50. These cross-appeals followed.[4]

Jefferson raises the following issues for our review:

1. Whether the trial court erred in determining that [Carosella's] false statement that the [house] was built

_____

[4] Jefferson filed his notice of appeal on July 22, 2020, and Carosella filed his notice of appeal on July 23, 2020. Both parties, as well as the trial court, complied with Pa.R.A.P. 1925. The trial court filed separate Rule 1925(a) opinions addressing the issues raised by each party in their respective appeals.

according to all applicable [building] codes - a statement proven to be untrue at trial - was not purposefully deceptive and[,] therefore[,] did not constitute a violation of the [UTPCPL?]

2. Whether the trial court erred in determining that [Carosella's] false statement that the [house] was built according to all applicable [building] codes - a statement proven to be untrue at trial - was not purposefully deceptive and[,] therefore[,] did not constitute [a] violation of the [UTPCPL] because [Carosella was] entitled to rely on [the City of Philadelphia Department of Licenses and Inspections'] issuance of a certificate of occupancy[?]

3. Whether the trial court erred in determining that [Carosella was] not [a] vendor [under] the [UTPCPL] because [Carosella was] not involved in the sales transaction of the [house] at issue, despite [Carosella's] direct representation of building code compliance to [Jefferson's real estate] agent and clear precedent from this Court that privity of contract is not required for a builder-vendor, and that builders have a responsibility to avoid deceptive conduct in regards to any specially foreseeable purchaser of that builder's property[?]

Jefferson's Brief at 6-7 (extraneous capitalization omitted).

Carosella raises the following issues for our review:

[1.] Whether the trial court erred as a matter of law when it failed to rule that under [our] Supreme Court's decision in ***Conway v. Cutler***, [] 99 A.3d 67, 73 ([Pa.] 2014), any duty on the part of [Carosella, as] builder[,] to construct the property in a workmanlike manner[,] did not extend to [Jefferson] as the subsequent purchaser of the property [and] who [was] not in privity with [Carosella]?

[2.] Whether the trial court erred as a matter of law when it failed to rule that[,] in the absence of any implied or express warranties, no duty is owed by [Carosella, as builder,] to [Jefferson], a subsequent purchaser, to construct the property in a workmanlike manner and that there can[,] therefore[,] be no recognized negligence claim?

[3.] Whether the trial court erred in denying [Carosella's] post-trial motion on grounds that ***DeTillo v. Carlyn Constr*[.]*, Inc.*, [] 206 A.2d 376 (Pa. 1965) was the controlling case law that supported [Jefferson's] claim that [Carosella was] negligent for [his] purported failure to construct a property that complied with the building code?

[4.] Whether [the] trial court erred as a matter of law by failing to rule that any duties [Carosella] owed to [Jefferson] to construct the property in a workmanlike manner arose by virtue of [Carosella's] contract with the original [buyer] and not [as] a social duty owed in tort and, as such, [Jefferson's] claim of negligence was precluded by the gist of the action doctrine[?]

[5.] Whether the trial court erred as a matter of law by denying [Carosella's] proposed jury instruction [number] 21 instructing the jury on the law as to implied warranties of habitability and workmanship pursuant to ***Conway, supra***[,] when ***Conway*** is the controlling case law on the issue of whether [Carosella] breached any duty owed to [Jefferson] to construct the property in a [workmanlike] or habitable manner[?]

[6.] Whether the trial court erred as a matter of law by failing to rule that [Jefferson's] claim[, premised on his reliance of an electronic mail response] from [Carosella] stating that the property was built to code[,] demonstrated that [Jefferson] was conflating warranty-based claims with a claim for negligent misrepresentation[?]

Carosella's Cross-Appeal Brief at 7-9 (extraneous capitalization omitted).

We begin by addressing the issues raised by Jefferson. Jefferson's issues, *in toto*, challenge the trial court's verdict, in a non-jury trial, that found Carosella did not violate the UTPCPL. When considering a verdict in a non-jury trial, our standard and scope of review are well-settled.

> Our standard of review in non-jury trials is to assess whether the findings of facts by the trial court are supported by the record and whether the trial court erred in applying the law. Upon appellate review the appellate court must

- 6 -

> consider the evidence in the light most favorable to the verdict winner and reverse the trial court only where the findings are not supported by the evidence of record or are based on an error of law. ***Allegheny County Hous[.] Auth[.] v. Johnson***, 908 A.2d 336, 340 (Pa. Super. 2006). Our scope of review regarding questions of law is plenary. ***Id.***
>
> ***Skiff re Bus., Inc. v. Buckingham Ridgeview, LP***, 991 A.2d 956, 962 (Pa. Super. 2010). Moreover, "the trial court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the [trial] court abused its discretion or that the [trial] court's findings lack evidentiary support or that the [trial] court capriciously disbelieved the evidence." ***Infante v. Bank of Am., N.A.***, 130 A.3d 773, 776 (Pa. Super. 2015) (quotation omitted), *appeal denied*, [] 138 A.3d 5 ([Pa.] 2016).

***Century Indem. Co. v. OneBeacon Insur. Co.***, 173 A.3d 784, 802 (Pa. Super. 2017) (original brackets omitted), *appeal denied*, 190 A.3d 1129 (Pa. 2018).

Recently, our Supreme Court reiterated that, "[t]he UTPCPL was created to even the bargaining power between consumers and sellers in commercial transactions, and to promote that objective, it aims to protect the consumers of the Commonwealth against fraud and unfair or deceptive business practices." ***Commonwealth v Chesapeake Energy Corp.***, 247 A.3d 934, 936 (Pa. 2021) (citations omitted). "As a remedial statute, the UTPCPL is to be liberally construed to effectuate its objective of protecting the consumers of this Commonwealth from fraud and unfair or deceptive business practices." ***Id.*** (original quotation marks and citation omitted).

To bring a private cause of action under the UTPCPL, an individual must establish that,

(1) they purchased or leased goods or services primarily for a personal, family, or household purpose; (2) they suffered an ascertainable loss of money or property; (3) the loss occurred as a result of the use or employment by a vendor of a method, act, or practice declared unlawful by the [UTPCPL]; and (4) the consumer justifiably relied upon the unfair or deceptive business practice when making the purchasing decision.

**Gregg v. Ameriprise Fin., Inc.**, 245 A.3d 637, 646 (Pa. 2021) (quotation marks omitted); **see also** 73 P.S. § 201-9.2(a) (stating, "[a]ny person who purchases or leases goods or services primarily for personal, family[,] or household purposes and[,] thereby[,] suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act[,] or practice declared unlawful by [73 P.S. § 201-3], may bring a private action to recover actual damages or [$100.00], whichever is greater").

Section 201-3(a) of the UTPCPL makes it unlawful for a vendor to engage in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by[, *inter alia*, 73 P.S. § 201-2(4)(i-xxi)]". **See** 73 P.S. § 201-3(a); **see also Fazio**, 62 A.3d at 409 (stating, an individual must prove that the vendor engaged in unfair methods of competition and unfair or deceptive acts or practices and that the transaction between the parties constituted "trade or commerce" within the meaning of the UTPCPL). Section 201-2(4) of the UTPCPL defines "unfair methods of competition" and "unfair or deceptive acts or practices" as, *inter alia*, "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi).

Section 201-2(3) defines the terms "trade" and "commerce" as "the advertising, offering for sale, sale[,] or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and includes any trade or commerce directly or indirectly affecting the people of this Commonwealth." *Id.* at § 201-2(3).

Our Supreme Court, interpreting the UTPCPL, and specifically Section 201-2(4)(xxi), stated,

> The plain language of [Section 201-2(4)(xxi)] imposes liability on commercial vendors who engage in conduct that has the potential to deceive and which creates a likelihood of confusion or misunderstanding. That is all that is required. The legislature required neither carelessness nor intent when a cause of action is premised upon deceptive conduct.

*Gregg*, 245 A.3d at 649. The test for deceptive conduct, as defined by the *Gregg* Court, is "whether the conduct has the tendency or capacity to deceive." *Id.* (citation omitted). The plaintiff must prove that "the acts or practices are capable of being interpreted in a misleading way [and] proof of intent is not necessary in order to establish deceptive conduct." *Id.* "[T]he vendor is in a better position to determine whether the representation might be deceptive" and, therefore, the vendor bears the responsibility of conforming his or her conduct to the UTPCPL. *Id.* at 650. Defining a violation of the UTPCPL as a strict liability offense, the *Gregg* Court stated that, "liability for deceptive conduct under the [UTPCPL] cannot be excused **if** consumers rely upon that conduct to their financial detriment." *Id.* (emphasis added).

The **Gregg** Court reasoned that, "consumers may be especially reliant upon a vendor's specialized skill, training, and experience in matters with which consumers have little or no expertise." **Id.** Under Section 201-2(4)(xxi), the commercial vendor's "state of mind as to either the truth or falsity of the representation or the effect that the misrepresentation will have on the consumer is irrelevant." **Id.** at 651; **see also Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care**, 194 A.3d 1010, 1023 (Pa. 2018) (stating, "it need only be shown that acts and practices are capable of being interpreted in a misleading way").

In addition to proving that the statement had the tendency or capacity to deceive, a private plaintiff must also show that he, or she, relied on that statement to his, or her, financial detriment. **Gregg**, 245 A.3d at 649-650. Pennsylvania courts have long-held that a party is not obligated to investigate the veracity of a statement in order for the reliance on the statement to be justifiable, but a party is not justified in relying on a statement that the party knows to be false, or its falsity is obvious. **Toy v. Metropolitan Life Ins. Co.**, 928 A.2d 186, 207-208 (Pa. 2007).

"UTPCPL claims may be asserted by third parties against contractors who make misrepresentations, despite the absence of privity, when reliance is specially foreseeable and damage proximately results." **Adams v. Hellings Builders, Inc.**, 146 A.3d 795, 798-799 (Pa. Super. 2016) (stating, "subsequent purchasers of residential real estate are specially foreseeable plaintiffs vis-à-vis the home builder"). "In order to bring a private cause of

action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." ***Zajick v. The Cutler Group, Inc.***, 169 A.3d 677, 680 (Pa. Super. 2017) (citation, original quotation marks, and emphasis omitted).

Jefferson's first and second issues collectively challenge the trial court's finding that Carosella's statement[5] did not constitute "deceptive conduct" under the UTPCPL and, therefore, he could not be found to have violated the UTPCPL. Jefferson's Brief at 17-33. Jefferson argues that it is the responsibility of Carosella, as the builder-vendor, to ensure that any statement he made regarding the stucco installation was truthful. ***Id.*** at 17. Jefferson asserts that Carosella was admittedly unaware of the quality of the stucco installation, as the work was performed by a subcontractor, and of the then-applicable building code concerning stucco installation. ***Id.*** at 26-27. Jefferson contends that Carosella made false statements and engaged in "deceptive conduct" under the UTPCPL because Carosella declared that Jefferson's home was built in compliance with City of Philadelphia building codes despite a purported lack of knowledge of the applicable code requirements. ***Id.*** at 27. Jefferson asserts that the trial court applied an incorrect standard for liability under the UTPCPL when it determined that

---

[5] To reiterate, Carosella declared that Jefferson's house was built according to all applicable building codes as prescribed by the City of Philadelphia.

Carosella did not intend his statement to be fraudulent and deceptive and that Carosella, in good faith, believed the statement to be the truth because a certificate of occupancy had been issued for the house, which would not have been issued but for the house being built in accordance with all applicable building codes. *Id.* at 22-24, 30 (stating, "the UTPCPL outlawed any deceptive conduct regardless of a vendor's mental state" (citation, original quotation marks, and emphasis omitted)). Jefferson contends the trial court further erred in finding that he did not rely on Carosella's deceptive statement. *Id.* at 21. Jefferson avers that Carosella's representation that the house "was built to code, that it was built purposefully the way it was built was very reassuring." *Id.* (emphasis omitted).

Carosella argues that, although Jefferson's evidence at trial suggested that the construction was defective and did not comply with the applicable building code, he needed to prove more than defective construction and non-compliance with the building code to recover under the UTPCPL. Carosella's Brief at 25. Carosella contends that the function of the trial court, in the instant case, was to act as more than "a rubber stamp" on whether the stucco installation was, in fact, defective and violated the building requirements. *Id.* at 22. Carosella asserts that the trial court, instead, was tasked with evaluating the evidence and, in determining which evidence was credible, deciding if, in fact, Carosella's statement was deceptive and misleading under the circumstances or within the context it was made. *Id.* at 22-23; *see also Garwood v. Ameriprise Fin., Inc.*, 240 A.3d 945, 949 n.2

(Pa. Super. 2020) (stating, a plaintiff's mere claim that conduct was deceptive does not make it so, rather, the trial court must make a factual finding that the conduct was deceptive), *appeal denied*, 2021 WL 2677815 (slip copy). His statement was not deceptive or misleading, Carosella argues, because at the time he made it, he was relying on the issuance of a certificate of occupancy for the house, which indicated to Carosella that the property was built according to the applicable building codes. *Id.* at 23. Carosella further contends that Jefferson failed to prove that he justifiably relied upon the statement given that Jefferson testified he never saw the statement, or understood that it was referring to the house's stucco, prior to agreeing to purchase the property. *Id.* at 33-34.

The trial court, in denying Jefferson's cause of action for a violation of the UTPCPL, found that Carosella "made a reasonable statement based upon any existing knowledge he had" and, therefore, did not violate the UTPCPL. N.T., 2/7/20, at 95. The trial court further explained that Carosella's statement "was not deceptive or misleading since he was relying upon his memory related to the time of the build and the fact that [the City of Philadelphia Department of Licenses and Inspections] inspected the property without issue" and issued a certificate of occupancy. Trial Court Order, 6/24/20, at 2. In its Rule 1925(a) opinion, the trial court stated that Carosella's statement "in which he disclaimed awareness of the stucco [installation] and relayed that the [house] was built to code, was neither

fraudulent nor deceptive[.]" Trial Court Opinion, 10/27/20, at 6-7. The trial court explained that,

> Based upon his response to the [electronic mail] inquiry, [the trial] court could not conclude that [Carosella] had the necessary knowledge at the time of the stucco issues nor did he make the statement to anyone in order to induce any action on the part of either the [original buyer] or [Jefferson]. At the time of his response, [Carosella] had no interest in the transaction[.]

*Id.* at 8 (extraneous capitalization omitted).

In finding that Carosella's statement was reasonably based upon his then-current knowledge of the stucco installation and that he did not purposefully make the statement to induce a particular action by Jefferson, the trial court erred as a matter of law in considering Carosella's state of mind and his intent when making the statement. *Gregg*, 245 A.3d at 649 (stating, "proof of intent is not necessary in order to establish deceptive conduct"). As the *Gregg* Court stated, "[i]t is the capacity to deceive rather than the actor's state of mind that render[s] conduct actionable under" Section 201-2(4)(xxi). *Id.* at 648. In determining whether the statement was deceptive, the trial court failed to focus on whether the statement had the tendency or capacity to deceive Jefferson and, instead, focused on the intent of Carosella. This error of law does not require a remand, however, because the trial court found that even if the statement amounted to deceptive conduct,

> Jefferson [was] unable to show that he [] justifiably relied on [] Carosella's statement in purchasing the [house] as he [] already had notice and knowledge of the stucco issue and had the property inspected by his own home inspector prior to completing the purchase. [] Carosella's statement may have been a factor in his

deciding to go through with the purchase, but nothing supports that it was the sole factor that he [] justifiably relied upon.

*Id.* at 9. It is Jefferson's failure to demonstrate that he justifiably relied upon Carosella's statement when deciding to purchase the house that is the focus of our review.

Here, the record demonstrates that a real estate agent, who was acting as the selling agent for the original buyer, sent an inquiry to Carosella as follows:

> Property is under contract with [Jefferson]. The inspection was conducted last week and [Jefferson] has some concerns with some hairline cracking on several areas of the property[.] Our question for [Carosella] is, what type of flashing (if any) is behind the stucco by the sliding doors? Or if he has any other [information] to pass along pertaining to the flashing/stucco.

Jefferson's Second Amended Complaint, 12/13/18, at Exhibit A. Jefferson's real estate agent expanded upon the inquiry directed to Carosella as follows:

> [T]he biggest concern is the lack of flashing at the bottom of the stucco, which prevents water build up behind [the stucco] and helps [to allow water to run off.] The [home] inspector and the stucco contractor I brought through [the house] said that there was no flashing installed, and we were not sure if we just could not see it, or [if] there was a reason that it was done the way that it was. Both [the home inspector and the stucco contractor said flashing] was necessary, [as did] a general contractor that I spoke with.

*Id.* A representative for Carosella replied with the following statement, which is at issue,

> The builder [(Carosella)] does not recall the specifics of the [house's] finishes as he has done numerous projects since then

- 15 -

but what he is sure of [is] that all items were done to code of that year.

*Id.* at Exhibit B.  Jefferson testified that he was only aware, prior to purchasing the house, of the response from Carosella's representative and that, prior to purchasing the house, he did not receive copies of, or review, the correspondence generated by either his real estate agent or the original buyer's real estate agent.  N.T., 2/3/20, at 149-153, 160.  As such, Jefferson stated that he understood the representative's reference to the house's "finishes" to mean such items as the house's doorknobs and handles, tile flooring, and paint color and that the reference to "finishes" did not mean the stucco.  *Id.*

Jefferson testified that his home inspector, who was hired to inspect the house as part of the real estate transaction, identified concerns surrounding cracks in the stucco and advised Jefferson that the stucco issue should be fully evaluated prior to settlement.[6]  N.T., 2/3/20, at 88, 130.  As a result of the

---

[6] The home inspector, who inspected the house on March 12, 2015, identified a "major concern" as follows:

> **Possible Major Concern, Repair:** Cracks were noted in stucco located at multiple locations, including the right wall, rear wall, and adjacent to the roof access stairway.  In addition, no flashing was evident at the deck ledger board – proper flashing at deck ledger boards decreases the likelihood of moisture penetration at the wall behind and adjacent to the ledger board.  The stucco should be fully evaluated prior to settlement by a qualified contractor (familiar with proper stucco installation) and repaired as required.

Carosella's Trial Exhibit D-51; *see also* Jefferson's Trial Exhibit P019.

home inspector's identification of a potential problem with the stucco, and prior to receiving Carosella's statement *via* electronic mail, Jefferson proposed that, as part of the agreement to purchase the house, the original buyer extend Jefferson a $5,000.00 credit in order that Jefferson could have the stucco issue addressed after purchasing the house.[7] *Id.* at 143-145; *see also* Carosella's Trial Exhibit D-16. Thereafter, as follow-up to the house inspection and Jefferson's proposed addendum to the sales agreement to purchase the house, both Jefferson and the original buyer engaged separate contractors to evaluate the stucco. N.T., 2/3/20, at 130. The following exchange occurred *via* cellular telephone text messaging between Jefferson's real estate agent and Jefferson:

> [Agent:]  Sounds like [the original buyer] had the stucco looked at about a year and a half [ago] and they said it was cosmetic and only setline cracks. He just called me and said they won't give [any money towards a credit for repairing the] stucco[.]
>
> [Agent:]  He's still not giving up any money because they feel there's nothing wrong with the stucco and can't imagine that the builder didn't install the flashing, and if he didn't, there was a reason. [T]hey are

---

[7] The addendum to the sales agreement stated,

> Cracks were noted in stucco located at multiple locations, including the right wall, rear wall, and adjacent to the roof access stairway. In addition, no flashing was evident at the deck ledger board – proper flashing at deck ledger boards decreases the likelihood of moisture penetration at the wall behind and adjacent to the ledger board. Seller to provide $[5,000.00] credit for stucco repairs.

Carosella's Trial Exhibit D-16.

trying to reach out to [the builder] to get an answer or explanation[.]

[Jefferson:]     Okay we'll wait to hear from the builder.

[Agent:]     The agents that sold [the house] in the past did not know. [T]he listing agent is going to C&R building supply in the morning to see what he can find out there. That is the builders showroom and supply store.

[Jefferson:]     Okay.

[Agent:]     He was going to go to C&R but then found out he would not be there. So instead[,] the agent is having a different stucco contractor come out tomorrow morning and he will get back to me tomorrow afternoon. So[,] they are tying to do their due diligence as well.

[Jefferson:]     Okay yeah that's fine. Really[,] we just want to get it right more than anything.

. . .

[Agent:]     [My] Stucco guy went over there this morning and I just spoke with him. He said because no water is getting in, and the way that the concrete is sealed underneath, it is fine the way it is[,] and he would not touch it. He is going to write something up and send it over to us, and may be [I can] put you in touch with him after. Let me see what he sends over.

[Jefferson:]     Ok.

[Agent:]     They said we would see brown around the area there if there was water and that would be his biggest concern. He also said the cracks are just settlement and probably worse because of where it is and because of the door.

[Jefferson:]     Ok if that's the case I guess it should be fine.

[Agent:]     So let me see what he sends over and then we can go from there. I should get it soon. Stucco is just a big concern for everyone because if it isn't done

- 18 -

> right, it can be an issue, but he said it looks like everything was sealed so tight that it was done correctly.
>
> [Agent:] I sent you an email but I just went back to [the original buyer] again. I was able to get you the $[1,500.00 credit] that it would [cover the] cost to do the flashing.
>
> [Jefferson:] Okay that sounds good.
>
> [Agent:] Cool with you? I will write [a revised addendum to the sales agreement] and send [it] to you to sign like we had before[.]

Carosella's Trial Exhibit D-12; *see also* Jefferson's Trial Exhibit P020.

Viewing the evidence in the light most favorable to Carosella, as verdict winner, we concur with the trial court, and the record supports, that Jefferson did not justifiably rely on Carosella's statement. The record demonstrates that at the time Jefferson agreed to purchase the house, he understood that there may be an issue with the stucco but, based upon a subsequent evaluation of the stucco by his real estate agent's "stucco guy," he understood that no water was getting in, that the concrete was sealed, and that the cracks were due to settlement. Jefferson relied upon this information when he accepted the original buyer's counteroffer of a $1,500.00 credit for the stucco repairs and agreed to purchase the house. Although Jefferson received a copy of Carosella's statement prior to agreeing to purchase the property, Jefferson stated that he understood Carosella's statement to be referring to the house's finishes and not to the stucco. In short, Jefferson did not understand Carosella's statement to refer to the house's stucco, and the record shows

that Jefferson relied upon parties other than Carosella in evaluating the condition of the stucco before concluding his house purchase. Accordingly, we discern no error of law or abuse of discretion in the trial court's finding that Jefferson failed to prove that he justifiably relied upon Carosella's statement when he agreed to purchase the house and subsequently incurred the cost to repair the stucco. Consequently, Jefferson's first and second issues are without merit.[8]

We turn next to Carosella's cross-appeal in which he challenges the trial court's denial of his request for a judgment notwithstanding the verdict. Our standard and scope of review of a denial of a request for a judgment notwithstanding a verdict are well-settled.

_____

[8] Jefferson's third issue, although not dispositive in the case *sub judice*, challenges the trial court's statutory interpretation of the term "vendor" within the context of the UTPCPL and, thus, raises a question of law for which our scope of review is plenary and our standard of review is *de novo*. **See Gregg**, 245 A.3d at 644; **see also** Jefferson's Brief at 34-41. Based upon the record, we find the trial court erred in concluding that the Carosella was not a "vendor" for purpose of the UTPCPL. **See** Trial Court Opinion, 10/27/20, at 12 (stating, the UTPCPL does not apply to Carosella because "he was not in any way involved in the sale of real property between [the original buyer] and [Jefferson]"). In short, the UTPCPL makes it unlawful for a vendor to employ unfair methods of competition and unfair or deceptive acts or practices **in the conduct of any trade or business**. 73 P.S. § 201-3(a). Therefore, a "vendor" must engage in conducting a trade or business, which under the UTPCPL, includes, *inter alia*, the offering of services, *i.e.,* home construction, that directly **or indirectly** affects the people of this Commonwealth. Consequently, despite that fact that Carosella did not build the house for Jefferson, his services indirectly affected Jefferson thereby satisfying the definition of a "vendor" under the UTPCPL.

> [A] judgment notwithstanding the verdict can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for judgment notwithstanding the verdict, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the trial court could have properly made its award, then we must affirm the trial court's denial of the motion for judgment notwithstanding the verdict. A judgment notwithstanding the verdict should be entered only in a clear case.

*Karden Constr. Servs., Inc. v. D'Amico*, 219 A.3d 619, 627 (Pa. Super. 2019) (original brackets and citation omitted), *appeal denied*, 229 A.3d 234 (Pa. 2020).

Carosella's first four issues, in sum, assert that the trial court erred in permitting a jury verdict to stand that was based upon a claim of negligence in the construction of the house. Carosella's Cross-Appeal Brief at 21-38. Carosella contends that Jefferson's theory of recovery asserts a cause of action alleging a breach of an implied warranty that the house would be habitable and constructed in a workmanlike manner. *Id.* at 23. Carosella argues that, under Pennsylvania caselaw, Jefferson was not permitted to recover for this cause of action because (1) the property did not involve a newly-constructed

home, and (2) there was no contractual privity between the parties. *Id.* at 23-38.

In so arguing, Carosella raises a question of law as to whether a subsequent purchaser of a property can recover damages from a builder for his or her negligence resulting from the defective construction of a home. As with all questions of law, our standard of review is *de novo* and our scope of review plenary. *Gregg*, 245 A.3d at 644.

We begin by examining the decision in *Elderkin v. Gaster*, 288 A.2d 771 (Pa. 1972) where our Supreme Court first adopted the doctrine of implied warranty of workmanlike construction. This implied warranty states that a builder-vendor impliedly warrants that the newly-constructed house he, or she, builds and sells is constructed in a reasonably workmanlike manner and that it is fit for habitation. *Elderkin*, 288 A.2d at 777. Over time, our Supreme Court further refined this implied warranty doctrine stating that privity between the parties must be established to successfully bring a cause of action for breach of the implied warranty of workmanlike construction. *Conway*, 99 A.3d at 73.

While a cause of action for a breach of implied warranty of workmanlike construction is limited to the first purchaser-user of a newly-constructed house, second purchasers or later users of the house are permitted to bring a cause of action for negligence based upon allegations of defective construction. *DeTillo*, 206 A.2d at 378. Our Supreme Court in *DeTillo* stated,

It has long been the law that when it is obvious to the contractor that a third party would necessarily, in the natural course of events, be brought into contact with, or would use the defective construction, then the contractor will be liable for injuries sustained by the third person caused by the negligence of the contractor.

*Id.; see also Grodstein v. McGivern*, 154 A. 794 (Pa. 1931) (adopting the principle that a builder owes a duty of care to a third party where, although the third party is not a party to the contract, it should under circumstances have been obvious to the builder that the third party would necessarily, in the natural course of things, be brought into contact with, or would use, the defective article or structure so furnished).[9] "No longer, when the consequences of negligence can be foreseen, does liability grow out of contract[,]" rather, a second purchaser or later user of a house may recover from the builder-contractor, absent privity, for negligent construction when the second purchaser or later user was a foreseeable recipient or user of the defective construction. *Woodward*, 548 A.2d at 315 (stating that "only the identity of the [purchaser/user is] affected by the sale of the property[,] the

---

[9] The principle announced in *Grodstein* provided an exception to the general principal, which dates to the prior century, that "a contractor's liability for defects in the construction was limited to the persons in direct privity with the contractor; the contractor was fully absolved from liability to third persons for injuries caused by even latent defects upon delivery and acceptance of possession of the realty." *Woodward v. Dietrich*, 548 A.2d 301, 314 (Pa. Super. 1988), *relying on e.g.*, *Curtin v. Somerset*, 21 A. 244 (Pa. 1891).

amount, duration, and class of person to whom the builder-contractor is liable for damages remains the same).[10]

With this understanding of pertinent caselaw, we turn to Carosella's argument that "a close examination of Jefferson's self-described negligence claim reveals that it is in fact an implied warranty claim that is rooted in contract." Carosella's Cross-Appeal Brief at 23.

> [U]nder Pennsylvania's fact pleading system, the complainant need only state the material facts upon which a cause of action is based. Pa.R.C[iv].P. 1019(a). The duty to discover the cause or causes of action rests with the trial court.

***Grossman v. Barke***, 868 A.2d 561, 569 (Pa. Super. 2005) (case citation omitted), *appeal denied*, 889 A.2d 89 (Pa. 2005). To establish a cause of action for negligence, "the plaintiff must establish the defendant owed a duty of care to the plaintiff, that duty was breached, the breach resulted in the plaintiff's injury, and the plaintiff suffered an actual loss or damages." ***Merlini ex. rel. Merlini v. Gallitzin Water Auth.***, 980 A.2d 502, 506 (Pa. 2009).

Here, in finding that Jefferson pleaded a cause of action for negligence, the trial court stated,

> [T]he original contract between [Carosella] and [the original buyer] merely served to create the relationship between the parties for the negligence tort committed; the original sales contract's existence is a collateral issue. [Jefferson] does not

---

[10] Under the principle first announced in ***Grodstein***, a builder-contractor "may not plead immunity from liability for resulting damage on the basis that his[, or her,] responsibility ceased with the insertion of the last bolt and the driving of the last nail." ***Woodward***, 548 A.2d at 315.

allege any breach of the contractual obligations that [Carosella] had with [the original buyer]. He does not allege that [Carosella] failed to sell [the original buyer] the [house]. [Jefferson] does not allege that [Carosella] did not fulfill [his] obligation under the contract[] but[,] rather[,] that [he] was negligent in performing [his] obligation to construct the [house according] to [the applicable building] code. This is an action that sounds in [negligence.]

Trial Court Opinion, 11/17/20, at 12.

Here, a review of Jefferson's second amended complaint demonstrates that he stated the following material facts in support of his negligence claim:

170. [Carosella] owed [Jefferson] a duty of care to ensure that the construction of [Jefferson's house] was completed in such a way that conformed to applicable building codes[] and did not present a danger to [Jefferson] or [his] personal property.

171. In addition, [Carosella was] responsible for, supervised[,] and installed the installation of each of the various parts of the [house] comprising the exterior, including, but not limited to[,] the sheathing, weather barrier, windows, doors, flashing, stucco, stone[,] and cladding.

172. [Carosella] breached that duty when [he] failed to adequately construct the [house] to avoid water penetration throughout the [house].

173. As set forth more fully above, various elements of the [house] were negligently designed and negligently installed.

174. As a direct and proximate result of that breach [of duty], [Jefferson] has been damaged.

Jefferson's Second Amended Complaint, 12/13/18, at 23 ¶¶170-174. We discern no error of law or abuse of discretion in the trial court's conclusion that Jefferson pleaded a cause of action for negligence.[11]

Moreover, the trial court properly concluded that Jefferson, as a second purchaser of the house, may bring a cause of action for negligent construction against Carosella, despite the absence of privity, because Jefferson was a foreseeable recipient of Carosella's defectively constructed house.[12] **See DeTillo**, 206 A.2d at 378; **see also Woodward**, 548 A.2d at 314-315; Trial Court Opinion, 11/17/20, at 6 (stating, "Jefferson is a specially foreseeable plaintiff as it is natural for [Carosella] to understand that the constructed property would be sold during its useable life").

---

[11] Because Jefferson's cause of action was based upon averments regarding the negligent construction of the house and was not based upon allegations of a breach of a contract, as no contractual privity existed between the parties, we find no support for Carosella's assertion that Jefferson's negligence claim was barred by the "gist of the action" doctrine. **See eToll, Inc. v. Elias/Savion Advertising, Inc.**, 811 A.2d 10, 14 (Pa. Super. 2002) (explaining that, the "gist of the action" doctrine was "designed to maintain the conceptual distinction between breach of contract claims and tort claims [and] precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims").

[12] To the extent Carosella asserts that our Supreme Court's decision in **Elderkin, supra**, overruled its decision in **DeTillo, supra**, we cannot agree and Carosella cites no authority in support of his assertion. **See** Carosella's Cross-Appeal Brief at 38-47. Moreover, we are not persuaded by Carosella's contention that the lack of citation to **DeTillo, supra**, by Pennsylvania courts negates the legal principles set forth therein. **See** Carosella's Cross-Appeal Brief at 43.

Viewing the evidence in the light most favorable to Jefferson, as verdict winner, we discern no error of law or abuse of discretion in the trial court's denial of Carosella's post-trial motion requesting judgment notwithstanding the verdict. Consequently, Carosella's first four issues are without merit.

Regarding Carosella's fifth and sixth issues, a review of Carosella's appellate brief demonstrates that he failed to set forth a developed and meaningful argument, with citation to authority in support thereof. Carosella's Cross-Appeal Brief at 8, 21-47. Therefore, Carosella has waived these issues. *See Lackner v. Glosser*, 892 A.2d 21, 29-30 (Pa. Super. 2006) (stating that, "[a]ppellate arguments which fail to adhere to [the Pennsylvania Rules of Appellate Procedure] may be considered waived"); *see also* Pa.R.A.P. 2119(a) (stating, "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part - in distinctive type or in type distinctively displayed - the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent").

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/13/21

- 27 -